# IN THE SUPREME COURT OF TEXAS

════════════
No. 11-0732
════════════

IN RE STEPHANIE LEE, RELATOR

═══════════════════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
═══════════════════════════════════════════════════════

JUSTICE GREEN, joined by CHIEF JUSTICE JEFFERSON, JUSTICE HECHT, and JUSTICE DEVINE, dissenting.

The Court holds that a trial court cannot deny a motion to enter judgment on a binding mediated settlement agreement (MSA) to modify child custody, possession, or access based on a broad inquiry into the child's best interest. ___ S.W.3d at ___. Although the Court tries to distinguish between this case—in which the trial court stated on the record that it was not in the best interest of the child to approve the MSA—and a case in which modification pursuant to an MSA could endanger a child, here it is a distinction without a difference. Whether the trial court calls its grounds "best interest" or "endangerment," the bottom line is the same—the trial court, having heard testimony of the parties, refused to adopt the parents' agreed modification that it believed would subject the child to exposure to a registered sex offender. The Legislature has made the policy of this state clear: "The best interest of the child *shall always be the primary consideration* of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE § 153.002 (emphasis added). I would hold that under Texas Family Code section 153.0071,

and the Family Code as a whole, a trial court has discretion to refuse to enter judgment on a modification pursuant to an MSA that could endanger the child's safety and welfare and is, therefore, not in the child's best interest.[1]  To suggest that the Legislature intended otherwise is, I believe, absurd.  I respectfully dissent.

## I.  Facts and Procedural Background

Stephanie Lee, mother of a young girl, knew when she started dating Scott Lee that he was a convicted sex offender.  She later married the sex offender.  Despite knowing the conditions of Scott's deferred adjudication, which apparently prohibited him from being around children, she allowed her daughter to be in his presence.  She allowed Scott to live with her and her daughter, knowing that it violated the terms of his probation.  She allowed her daughter to have unsupervised contact with Scott, knowing that it violated his probation.[2]  Moreover, Benjamin Redus, the child's father, testified before the associate judge that Stephanie had allowed her daughter to sleep in the bed between her and Scott, who was naked.[3]  Not only did this mother admit on the record that she allowed her daughter to have unsupervised visitation with a registered sex offender, but her

---

[1] The concurrence agrees with this conclusion. ___ S.W.3d at ___.  Therefore, a majority this Court would hold that a trial court does not abuse its discretion by refusing to enter judgment on an MSA that places a child's safety and welfare at risk.

[2] In a hearing before the trial court, Stephanie was asked about an April 6, 2009, violation of Scott's deferred adjudication.  When the trial court asked about the nature of the violation, Stephanie responded: "It was that he was – I had unsupervised visitation contact with my daughter."  Later, when asked if Scott "has taken care of [the child] without your supervision," Stephanie answered, "No, she has not."  Although the record is not entirely clear, I interpret Stephanie's testimony to mean that her sex-offender husband was allowed to be alone with the child, in violation of his probation.

[3] Benjamin did not repeat this allegation during the hearing before the district court judge.

testimony informed the trial court that she had helped her husband to violate the terms of an existing court order by allowing such contact.

After additional probation conditions were imposed on Scott following his probation violations, the child went to live with her father. Benjamin later filed a petition to modify the parent-child relationship, alleging that circumstances had materially and substantially changed because Stephanie had voluntarily relinquished the primary care and possession of the child to him for more than six months. *See* TEX. FAM. CODE §§ 156.101, .401. Benjamin asserted that Stephanie's "poor parenting decisions . . . have placed our daughter in danger" and that Stephanie had "a history or pattern of child neglect directed against [the child]." He requested that the court limit Stephanie's possession and access and grant her only supervised visitation, and he sought to enjoin Stephanie from allowing Scott to be within twenty miles of the child.

Benjamin and Stephanie ultimately entered into an MSA reflecting their agreed modification of the initial order that established custody and possession. The MSA gave Benjamin the exclusive right to designate the primary residence of the child—a right previously afforded Stephanie—and allowed Stephanie periodic, unsupervised possession of the child. Additionally, the MSA contained a provision directed at Scott, who did not attend the mediation and was not a party to the suit or the MSA:

> At all times[,] Scott Lee is enjoined from being within 5 miles of [the daughter]. During the mother's periods of possession with [the daughter], Scott Lee shall notify [Benjamin] through Stephanie Lee by e-mail or other mail where he shall be staying . . . [a]nd the make and model of the vehicle he will be driving. This shall be done at least 5 days prior to any visits. [Benjamin] shall have the right to have an agent or himself monitor [Scott] Lee's location by either calling or driving by the location at reasonable times.

Although both Benjamin and Stephanie maintained that the MSA was in the child's best interest when the MSA was presented to the associate judge for entry of judgment, the associate judge refused to accept the MSA. Benjamin later requested to withdraw his consent to the MSA, stating that he believed it was not in the best interest of his daughter. He testified before the district court that he no longer believed the agreement was in his daughter's best interest and that when he signed the MSA, he was under the impression that Scott was still under probation guidelines and was going to move, which had not happened. The district court, which heard only brief testimony from Stephanie and Benjamin, determined that the MSA was not in the best interest of the child and denied Stephanie's motion to enter judgment on the MSA. The court then set the case for a full evidentiary trial.

## II. Section 153.0071 and the Family Code

This case presents a single issue of first impression: Does section 153.0071 of the Texas Family Code allow a trial court any discretion to refuse to enter judgment on an MSA that seeks to modify an existing court order pertaining to possession, access, or conservatorship of a child when the MSA complies with the statutory prerequisites but the court determines that the MSA endangers the child's safety and welfare and, thus, is not in the child's best interest? I believe it does.

## A. Statutory Provisions

Since at least 1935, Texas statutes have reflected the policy of this state to ensure that trial courts protect minor children's best interests. *See* Act of May 15, 1935, 44th Leg., R.S., ch. 39, § 1, 1935 Tex. Gen. Laws 111, 112 (providing that the trial court "shall make such orders regarding the custody and support of each such [minor] child or children, as is for the best interest of same"); Act

4

of May 25, 1973, 63d Leg., R.S., ch. 543, § 1, sec. 14.07(a), 1973 Tex. Gen. Laws 1411, 1425 ("The best interest of the child shall always be the primary consideration of the court . . . ."). Section 153.002 of the Texas Family Code describes this overarching policy: "The best interest of the child *shall always* be the *primary consideration* of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE § 153.002 (emphasis added). In suits affecting the parent-child relationship, it is the public policy of the State of Texas to:

(1) assure that children will have frequent and continuing contact with parents *who have shown the ability to act in the best interest of the child*;

(2) provide a *safe*, stable, and nonviolent environment for the child; and

(3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

*Id.* § 153.001(a) (emphasis added).

Texas statutes also reflect the state's general public policy "to encourage the peaceable resolution of disputes, with special consideration given to disputes involving the parent-child relationship, including the mediation of issues involving conservatorship, possession, and support of children, and the early settlement of pending litigation through voluntary settlement procedures." TEX. CIV. PRAC. & REM. CODE § 154.002. Advancing that policy, the Legislature enacted Texas Family Code section 153.0071 to address the resolution of suits affecting the parent-child relationship, providing in pertinent part:

(a) On written agreement of the parties, the court may refer a suit affecting the parent-child relationship to arbitration. The agreement must state whether the arbitration is binding or non-binding.

(b) If the parties agree to binding arbitration, the court shall render an order reflecting the arbitrator's award unless the court determines at a non-jury hearing that the award is not in the best interest of the child. The burden of proof at a hearing under this subsection is on the party seeking to avoid rendition of an order based on the arbitrator's award.

(c) On the written agreement of the parties or on the court's own motion, the court may refer a suit affecting the parent-child relationship to mediation.

(d) A mediated settlement agreement is binding on the parties if the agreement:

> (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

> (2) is signed by each party to the agreement; and

> (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

(e) If a mediated settlement agreement meets the requirements of Subsection (d), a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

(e-1) Notwithstanding Subsections (d) and (e), a court may decline to enter a judgment on a mediated settlement agreement if the court finds that:

> (1) a party to the agreement was a victim of family violence, and that circumstance impaired the party's ability to make decisions; and

> (2) the agreement is not in the child's best interest.

6

TEX. FAM. CODE § 153.0071.[4]  When first enacted in 1995, section 153.0071 addressed resolution of both dissolution-of-marriage cases and suits affecting the parent-child relationship, but in 1997 the Legislature enacted Family Code section 6.602 to address alternative dispute resolution in divorce cases and limited section 153.0071 to suits affecting the parent-child relationship.  *See* Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 27, sec. 153.0071, 1995 Tex. Gen. Laws 3888, 3899; Act of April 7, 1997, 75th Leg., R.S., ch. 7, § 1, sec. 6.602, 1997 Tex. Gen. Laws 8, 31–32;  Act of April 7, 1997, 75th Leg., R.S., ch. 937, § 3, sec. 153.0071(f), 1997 Tex. Gen. Laws 2941, 2941.  In 2005, the Legislature added the family violence provision in 153.0071(e-1), expressly recognizing a trial court's role in considering the best interest of a child when presented with an MSA.   Act of June 18, 2005, 79th Leg., R.S., ch. 916, § 7, sec. 153.0071(e-1), 2005 Tex. Gen. Laws 3148, 3150.

## B.  Analysis of Section 153.0071

Stephanie contends that she is "entitled to judgment" on the MSA because the MSA meets section 153.0071(d)'s prerequisites and the family violence provision set forth in section 153.0071(e-1) does not apply.  *See* TEX. FAM. CODE § 153.0071(d), (e), (e-1).  I do not disagree that

---

[4] The Collaborative Family Law Act, enacted in 2011, contains a similar provision:

(a)  A settlement agreement under [chapter 15, the Collaborative Family Law Act] is enforceable in the same manner as a written settlement agreement under Section 154.071, Civil Practice and Remedies Code.

(b)  Notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law, a party is entitled to judgment on a collaborative family law settlement agreement if the agreement:

(1)  provides, in a prominently displayed statement that is in boldfaced type, capitalized, or underlined, that the agreement is not subject to revocation; and

(2)  is signed by each party to the agreement and the collaborative lawyer of each party.

TEX. FAM. CODE § 15.105.

this MSA is binding on the parties or that the family violence provision does not apply in this case, but the Court's statutory analysis must not end there. We construe statutes as a whole, not as isolated provisions. *See, e.g.*, *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). We take into consideration the statutory context. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) ("The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results."); *Tex. Lottery Comm'n v. First State Bank of Dequeen*, 325 S.W.3d 628, 635 (Tex. 2010) ("We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context . . . ."). When analyzing the plain language of section 153.0071, the Court cannot ignore the fundamental best interest consideration required by section 153.002 and the overarching public policies set forth in section 153.001 to ensure the safety and welfare of children. *See* TEX. FAM. CODE §§ 153.001, .002, .0071.

### 1. "Entitled to Judgment" Should Not Be Read As Absolute

I agree that section 153.0071 does not *require* a trial court to determine that an MSA is in a child's best interest before entering judgment on an MSA. This makes sense because trial courts will generally delegate to parties entering an MSA the role of ensuring that the child's best interest is protected. *See id.* § 151.001(a)(2) ("A parent of a child has the following rights and duties . . . the duty of care, control, protection, and reasonable discipline of the child . . . ."). As we explained in *Miller ex rel. Miller v. HCA, Inc.*:

> The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making

8

life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children.

The Texas Legislature has likewise recognized that parents are presumed to be appropriate decision-makers . . . .

118 S.W.3d 758, 766 (Tex. 2003) (internal citations omitted); *see In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007) (recognizing that the Legislature amended the grandparent access statute following the United States Supreme Court's plurality opinion in *Troxel v. Granville*, 530 U.S. 57, 68 (2000), to provide that "a trial court must presume that a fit parent acts in his or her child's best interest"). Trial courts, therefore, should refrain from performing a broad best interest inquiry or conducting a full evidentiary hearing on every MSA presented. The question here is what happens when the trial court believes, based on evidence, that the parties have entered into an MSA without safeguarding the child's best interest. Can the presumption that parties act in the child's best interest, and protect the child's safety and welfare, be rebutted or negated? And does the Family Code, in that situation, allow the trial court to ensure that the child's safety and welfare are protected by refusing to enter judgment on an MSA that places the child in danger? I believe the answer to both questions is yes.

Section 153.0071(e) states that if an MSA satisfies the prerequisites of 153.0071(d), "a party is entitled to judgment on the [MSA] notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." TEX. FAM. CODE § 153.0071(e). The Court implies that "entitled to judgment" is absolute, making the presumption that parties act in a child's best interest irrebuttable and disallowing a trial court discretion to reject an MSA that jeopardizes a child's safety and welfare.[5]

---

[5] Yet, curiously, the Court has not ordered the trial court to enter judgment on the MSA.

9

But when read in context and in harmony with other statutory provisions, I cannot conclude that the Legislature intended such an absurd result. *See Molinet*, 356 S.W.3d at 411 (recognizing that a statute's plain language is the best indicator of the Legislature's intent, "unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results").

Woven throughout the Family Code is the clearly defined policy of this state that courts must ensure protection of a child's best interest. *See* TEX. FAM. CODE §§ 153.001–.002. More than one hundred sections of the Family Code contain specific provisions to protect children's best interests.[6] Indeed, children who are the subject of custody cases are particularly vulnerable, and Texas family law, as a whole, seeks to address the needs and interests of those children, who generally do not have a voice in the legal system and often cannot fully exercise their legal rights and advocate for their interests. *See, e.g.*, *Miller*, 118 S.W.3d at 766 ("The State's role as *parens patriae* permits it to intercede in parental decision-making under certain circumstances. . . . The Texas Legislature has acknowledged the limitations on parental decision-making."); *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (recognizing that courts cannot ignore section 153.001's remedial purpose of protecting

---

[6] *See, e.g.*, TEX. FAM. CODE §§ 2.103(a), (f); 31.002(a); 31.005; 33.003(i); 33.008(a); 45.004(a); 51.11(b); 54.04(i); 54.05(m); 54.11(k); 60.010; 85.001(b); 85.005(c); 105.004(2); 105.009(a); 107.001(1), (5); 107.002(a), (e); 107.004(e); 107.005(a), (c); 107.008(b), (c); 107.011(a), (b); 107.021(a), (b); 153.001(a); 153.002; 153.004(b), (d), (e); 153.006(c); 153.007(b), (d); 153.0071(b), (e-1); 153.009(c); 153.015(b); 153.072; 153.131(a), (b); 153.133(a); 153.134(a); 153.191; 153.193; 153.252(2); 153.254(a); 153.256(1); 153.257; 153.312(a); 153.317(a); 153.373(2); 153.374(b); 153.433(a), (b); 153.501(b); 153.551(c); 153.601(4); 153.605(b); 153.6051(b); 153.6082(e); 153.703(a), (c); 153.704(d); 153.705(a), (c); 153.709(b); 154.122(a); 154.123(a), (b); 154.124(b), (d); 154.131(c); 154.182(b); 156.006(b); 156.101(a); 156.102(b); 156.103(a), (b); 156.402(a), (b); 156.409(a-2); 160.608(b); 161.001(2); 161.003(a); 161.004(a); 161.005(a); 161.007(3); 161.101; 161.103(b); 161.2011(a); 161.204; 161.205(2); 162.0025; 162.009(b); 162.010(c); 162.014(b); 162.015(a); 162.016(a), (b); 162.020; 162.102; 162.2061(a); 162.302(e); 162.308(a); 231.101(d); 261.004(b); 262.1015(b); 262.114(c); 263.102(c); 262.201(e); 262.205(e); 263.007(b); 263.302; 263.3026(b); 263.306(a); 263.307; 263.401(b); 263.403(a); 263.404(a); 263.502(c), (d); 263.503(a), (b); 264.108(a); 264.403(b); 264.601(2); 264.754; 264.903(c); 266.004(b), (e), (g); 266.0041(b), (c), (e); 266.010(g), (i).

abused and neglected children, even in parental rights termination proceedings).  The Family Code's

many best interest provisions reflect this state's policy that children's interests are to be paramount

in legal proceedings, and that judges have the power to safeguard children from endangerment.  *See,*

*e.g.*, *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012) (referring to the "State's responsibility to promote

the child's best interest" and recognizing that although "a parent must remain vigilant with respect

to her child's welfare, . . . courts must *always* consider the child's best interest" (emphasis added));

*Miller*, 118 S.W.3d at 766 ("Of course, this broad grant of parental decision-making authority is not

without limits.").  Although "the emotional and physical danger to the child now and in the future"

is but one factor we listed as pertinent to a best interest determination, *see Holley v. Adams*, 544

S.W.2d 367, 371–72 (Tex. 1976), surely a custody, possession, or access arrangement that endangers

a child's safety and welfare is not in the child's best interest and, thus, should not be adopted as the

court's judgment.

The Family Code provision governing modification of orders for custody, possession, access,

and determination of residence reflects this state policy favoring judicial authority to protect

children's best interests.  Section 156.101 provides, in pertinent part:

> The court may modify an order that provides for the appointment of a conservator of
> a child, that provides the terms and conditions of conservatorship, or that provides
> for the possession of or access to a child *if modification would be in the best interest*
> *of the child* and:
>
>> (1) the circumstances of the child, a conservator, or other party affected by
>> the order have materially and substantially changed since . . .
>>> (A) the date of the rendition of the order; . . .
>
> . . . or

11

(3) the conservator who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of the child to another person for at least six months.

TEX. FAM. CODE § 156.101 (emphasis added). Nothing in section 156.101 addresses the processes through which modification terms can be reached, but regardless of whether those terms reflect a party agreement as expressed in a Rule 11 agreement, agreed parenting plan, or MSA, or are the product of binding arbitration or a full evidentiary hearing, the result is the same—the trial court modifies the terms of an earlier order that provided for conservatorship, possession, access, or determination of residence. Section 156.101 requires that a trial court modify such an order only when it would be in the child's best interest.

Section 153.0071, which reflects the state policy favoring the peaceable resolution of family disputes through alternative dispute resolution (ADR) procedures, *see* TEX. CIV. PRAC. & REM. CODE § 154.002, allows a trial court to enter judgment on an MSA for modification without a best interest determination. But the statute does not require trial courts to *always* enter judgment on binding MSAs without considering a child's best interest, as the Court's opinion suggests. In fact, the statute expressly authorizes consideration of a child's best interest in some MSA cases. *See* TEX. FAM. CODE § 153.0071(e-1). Section 153.0071(e-1), enacted a decade after the other MSA provisions, allows a trial court to consider a child's best interest when a party to an MSA was a victim of family violence, which impaired that party's decision-making ability. *See id.* "Family violence," as used in the Family Code, includes a threat that reasonably places the party or a household member "in fear of imminent physical harm, bodily injury, assault, or sexual assault." *Id.* §§ 71.004(1), 101.0125. The family violence provision in section 153.0071(e-1) makes sense only when read to mean that

(1) a party's impaired judgment resulting from physical violence or the threat of violence negates the presumption that the parties acted in the child's best interest in entering the MSA, and (2) the trial court can therefore look beyond the face of the MSA and consider whether the terms and provisions of the agreement are, in fact, in the best interest of the child. If the trial court determines that, despite family violence and impaired judgment, the MSA is in the child's best interest, the court must enter judgment on the MSA. But if the agreement is not in the child's best interest, the trial court can reject the agreement. Had the Legislature used "or" instead of "and" between the two parts of that family violence provision, a trial court would be able to reject an MSA simply because a parent was induced by family violence to enter into an MSA. But by using "and," the Legislature affirmed that the court's paramount concern, even in the case of MSAs obtained through family violence, is the child's best interest.[7] Although there is no indication that the family violence provision in section 153.0071(e-1) applies here, I believe that this last-enacted part of section 153.0071 indicates the will of the Legislature to allow a trial court to consider the terms of a modification when the presumption that MSA parties act in the best interest of the child has been

---

[7] At oral argument, Benjamin's counsel stated that he believed the Legislature inadvertently used "and" instead of "or" in the family violence provision, despite its intention to allow trial courts to consider the child's best interest before entering judgment on an MSA. *See* TEX. FAM. CODE § 153.0071(e-1); *Bd. of Ins. Comm'rs of Tex. v. Guardian Life Ins. Co. of Tex.*, 180 S.W.2d 906, 908 (Tex. 1944) (explaining that "and" is sometimes construed as "or," but only when "the context favors the conversion; as where it must be done in order to effectuate the manifest intention of the user; and where not to do so would render the meaning ambiguous, or result in an absurdity; or would be tantamount to a refusal to correct a mistake"). I am not convinced that the Legislature erred in this instance, as it is plausible that the Legislature, in the interest of avoiding the hardship of prolonged custody litigation on children in family violence situations, would want a court to invalidate an MSA that was the result of family violence only if the court finds that the MSA is not in the child's best interest. I do not disagree with Benjamin, however, that the Legislature might effectuate the overarching policy for courts to act in the child's best interest, as codified in section 153.002 and expressed throughout the Family Code, by allowing trial courts to reject MSAs when either the family violence requirement is met *or* the court finds it is not in the best interest of the child. I leave Benjamin's suggested revision of the statute to the Legislature to enact an amendment as it deems necessary.

13

negated. I further believe that section 153.0071, in the context of the Family Code as a whole, affords a trial court discretion to decline to enter judgment on a modification pursuant to an MSA when the court determines that it threatens a child's safety and welfare and is therefore not in the child's best interest. *See* TEX. GOV'T CODE § 311.025 (instructing that when statutes or statutory amendments are irreconcilable, those statutes or amendments enacted latest prevail).

Allowing trial court discretion to consider the terms of an MSA in rare cases such as this comports with section 153.004 of the Family Code, which allows a trial court to protect a child's safety and welfare in family violence cases by hearing evidence to ensure that a parent is granted access to a child only when it would not endanger the child and would be in the child's best interest. Section 153.004 states, in relevant part:

> (b) The court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child . . . .
>
> (c) The court shall consider the commission of family violence in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator.
>
> (d) The court may not allow a parent to have access to a child for whom it is shown by a preponderance of the evidence that there is a history or pattern of committing family violence during the two years preceding the date of the filing of the suit or during the pendency of the suit, unless the court:
>
>> (1) finds that awarding the parent access to the child *would not endanger the child's physical health or emotional welfare* and *would be in the best interest of the child*; and
>>
>> (2) renders a possession order that is designed to *protect the safety and well-being of the child* and any other person who has been a victim of family violence committed by the parent and that may include a requirement that:

14

> (A) the periods of access be continuously supervised by an entity or person chosen by the court; . . . .
>
> (e) It is a *rebuttable presumption that it is not in the best interest of a child* for a parent to have unsupervised visitation with the child if credible evidence is presented of a history or pattern or past or present child neglect or physical or sexual abuse by that parent directed against the other parent, a spouse, or a child.

TEX. FAM. CODE § 153.004 (emphasis added). Although some of the language of section 153.004 is directed at the acts of a parent, "family violence" is defined more broadly in the Family Code, to include:

> (1) an act by a member of a family *or household* against another member of the family *or household* that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is *a threat* that reasonably places the member *in fear of* imminent physical harm, bodily injury, assault, or sexual assault . . . [or]
>
> (2) abuse, as that term is defined by Sections 261.001(1)(C), (E), and (G), by a member of a family *or household* toward a child of the family or household.

*Id.* §§ 71.004(1) (emphasis added), 101.0125. The definition of "abuse" in section 261.001(1)(C) includes "physical injury that results in substantial harm to the child, or the *genuine threat of substantial harm* from physical injury to the child." *Id.* § 261.001(1)(C) (emphasis added). Taken together, it is nonsensical and absurd to read section 153.0071 as requiring a trial court to enter a judgment that section 153.004 prohibits a trial court from entering, especially in light of the specific directive that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." *Id.* § 153.002; *see also Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 73 (Tex. 2011) (recognizing that this Court "interpret[s] statutes to avoid an absurd result").

15

In the recently-enacted Collaborative Law Act (CLA), which contains a provision very similar to section 153.0071(e) but is not implicated in this case, the Legislature expressly authorized trial courts to issue emergency orders to protect children's welfare, despite the fact that the parties are engaging in a collaborative process to avoid litigation. *See* TEX. FAM. CODE § 15.104. Section 15.104 of the Family Code provides:

> During a collaborative family law process, a tribunal may issue an emergency order *to protect the health, safety, welfare, or interest of a party or a family*, as defined by Section 71.003. If the emergency order is granted without the agreement of all parties, the granting of the order terminates the collaborative process.

*Id.* (emphasis added). Under the CLA, the collaborative family law process concludes by "resolution of a . . . signed record," presumably meaning a signed settlement agreement. *See id.* § 15.102(c)(1). However, a collaborative process does not conclude "if, with the consent of the parties to a signed record resolving all or part of the collaborative matter, a party requests a tribunal to approve a resolution of the collaborative family matter or any part of that matter as evidenced by a signed record." *Id.* § 15.102(h). So when parties present a signed settlement agreement to a trial court judge for approval or entry of judgment, the court has authority to issue an emergency order to protect the safety or welfare of the children. The CLA thus confirms the Legislature's intent that trial courts are to protect children from harm and protect their best interests, even when children are placed at risk of harm by an agreement reached by the parties through a collaborative process.

I read section 153.0071, in the broader context of the family violence provision and the Family Code as a whole, as allowing a trial court discretion in rare cases such as this to consider the terms of an MSA before issuing a modification order, when evidence negates the presumption that

16

the parties acted in the child's best interest when negotiating or agreeing to an MSA. This reading gives effect to the state policy favoring amicable, efficient resolution of disputes through ADR, while also giving effect to the state policy ensuring protection of children's best interests in custody, possession, and access cases. *See* TEX. FAM. CODE §§ 153.001–.002, 156.101; TEX. CIV. PRAC. & REM. CODE § 154.002; *see also Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) ("The trial court is given wide latitude in determining the best interests of a minor child."); *Leonard v. Lane*, 821 S.W.2d 275, 277 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ("The court has the right to act in the best interest of the child, notwithstanding any agreements of the parties."). Moreover, this construction of the statute harmonizes provisions of the Family Code to streamline resolution of disputes in most suits affecting the parent-child relationship, while allowing trial courts to safeguard children's welfare in rare cases where parents or caregivers cannot be trusted to do so. In this case, Stephanie, who would be given unsupervised possession under the MSA, testified that she dated and then married a man she knew to be a convicted sex offender, and testified that she allowed him to live with her and her young daughter and allowed him unsupervised contact with the child, both in violation of his probation restrictions. Although the MSA contains provisions requiring Scott to stay away from the child during Stephanie's periods of possession, I question the enforceability of those provisions against either Stephanie, whose agreement purports to bind a non-party, or Scott, who did not agree to those provisions and is not a party to the lawsuit. I cannot join the Court in concluding that the trial court here abused its discretion by refusing to enter judgment on the MSA and ordering a full evidentiary hearing. Nor can I agree with the concurrence that the trial court abused it discretion because the evidence of endangerment was insufficient. *See* ___ S.W.3d at ___.

17

The Court takes the position that recognizing a trial court's discretion to consider an MSA's terms in some MSA cases renders the family violence provision in section 153.0071(e-1), as well as other statutory provisions mentioning children's best interests, mere surplusage. *See id.* at ___; *In re Caballero*, 272 S.W.3d 595, 599 (Tex. 2008) (instructing that "we 'give effect to all [a statute's] words and, if possible, do not treat any statutory language as mere surplusage'" (quoting *State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006))). I do not accept that use of the term "best interest" outside the expression of the state's policy in sections 153.001 and 153.002 is surplusage; rather, I read the "best interest" provisions in section 153.0071(e-1) and elsewhere in the Family Code as guidance to courts implementing the overarching policy directive expressed in sections 153.001 and 153.002. Surely the Legislature did not commit a useless act in enacting each of more than one hundred statutory provisions to assist courts in determining *how* and *when* to consider a child's best interest.[8] *See Tex. Lottery Comm'n*, 325 S.W.3d at 637 ("Courts 'do not lightly presume that the Legislature may have done a useless act.'" (quoting *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485 (Tex. 1998))). No, the Legislature continues to enact provisions using "best interest" to further the clearly defined policy of the state that best interest *always* be the court's primary consideration, and that trial courts are to protect the safety and welfare of children.

As further support for its construction, the Court points to the arbitration provision in section 153.0071(b), which allows a trial court to consider the best interest of the child before entering

---

[8] *See supra* at n.6.

judgment on an arbitrator's award, as indicating that the Legislature knew how to authorize courts to refuse to enter judgment on best interest grounds but chose not to do so for MSAs. *See* ___ S.W.3d at ___. I read the Legislature's language in section 153.0071(b) as wholly consistent with the Family Code's overarching policy that courts have discretion to protect the best interests of children, and not inconsistent with section 153.0071(e), under which courts generally presume that MSA parties have ensured that an MSA is in the child's best interest. In the rare instance that the evidence before the trial court negates that presumption, however, I believe the Family Code gives the court discretion to consider whether a proposed modification could place a child's safety or welfare at risk and thus not be in the child's best interest, just as the court has discretion to consider whether an arbitration award is in a child's best interest. Under the MSA between Stephanie and Benjamin, any disputes regarding interpretation or performance of the agreement or its provisions are to be decided by binding arbitration conducted by the mediator,[9] which the trial court could then review on best interest grounds pursuant to section 153.0071(b). It seems nonsensical to conclude, as the Court does, that the trial court cannot consider the child's best interest at the MSA stage but could consider the child's best interest only after an arbitration award deciding issues relating the entry, interpretation, or performance of the MSA.[10]

---

[9] Under the MSA, the parties agreed to have their attorneys first attempt to resolve disputes through phone conference with the mediator, and if the disputes cannot be resolved by phone conference, then they are to be decided by arbitration, with the mediator serving as arbitrator.

[10] Under this construction, Benjamin is powerless to challenge the MSA when a motion for entry of judgment is being considered. Instead, he must wait until the trial court enters judgment on the MSA and then challenge its enforcement through arbitration and, ultimately, again in court. Surely this inefficient process is not what the Legislature intended.

19

To be clear, I would not hold that a trial court can refuse to enter judgment on an MSA based on any one of the factors we listed in *Holley v. Adams* as pertinent to a best interest determination. *See* 544 S.W.2d at 371–72. That issue is not before us in this case,[11] as here we must decide only whether a trial court has discretion to reject an MSA that the trial court determines, based on evidence, places a child's safety and welfare in danger and, consequently, cannot possibly be in the child's best interest. I would hold that, under the unusual facts of this case, the trial court did not abuse its discretion by declining to enter judgment on the MSA that provides Stephanie unsupervised visitation and contains protective provisions directed only at Scott, who is not a party to the agreement or the lawsuit.

**2. "Notwithstanding . . . Another Rule of Law" Should Be Read Narrowly**

The Court reads "notwithstanding . . . another rule of law" in section 153.0071(e) broadly, as evidencing legislative intent that cases involving binding MSAs be excepted from the overarching public policy interests embodied (1) in section 153.002—that "[t]he best interest of the child shall always be" a court's "primary consideration" when "determining the issues of conservatorship and

---

[11] The Court suggests I misstate the issue because the trial court rejected the MSA on best interest grounds and did not make specific findings that the MSA places the child's safety and welfare in danger. ___ S.W.3d at ___ n.23. But findings necessary to support a trial court judgment will be implied when they are supported by evidence. *See, e.g.*, *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003) ("When neither party requests findings of fact and conclusions of law, it is implied that the trial court made all fact findings necessary to support its judgment." (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002))); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam) (holding that findings of fact should be implied in favor of an order modifying child support (citing *Lemons v. EMW Mfg. Co.*, 747 S.W.2d 372, 373 (Tex. 1988) (per curiam))). In the hearing before the trial court, there was no discussion of the specific *Holley* factors, but there was testimony about Scott, his contact with the child, and resulting probation violations. I believe I have accurately stated the issue and that in this case, as with any case in which an MSA endangers a child, these grounds for rejecting an MSA—that it jeopardizes a child's safety and that it is not in the child's best interest—are simply two sides of the same coin. Whether the trial court abused its discretion in rejecting an MSA that puts a child's safety and welfare in danger should not come down to whether the trial court used the word "endangerment" or tracked the language of the statute and instead used the phrase "not in the best interest of the child."

20

possession of and access to the child," and (2) in section 153.001—the state's public policy to "provide a safe, stable, and nonviolent environment for the child." *See* ___ S.W.3d at ___. But nothing in the statute expressly overrides either the Family Code's fundamental requirement that the court act in a manner consistent with the child's best interest or the express best interest provision for modifications in section 156.101. In addition, nothing in the statute expressly limits a trial court's authority to decline to enter judgment on a properly executed, binding MSA to the family violence context addressed in section 153.0071(e-1).

Although the Court cites our recent opinion in *Molinet v. Kimbrell*, 356 S.W.3d 407 (Tex. 2011), as support for its construction, we have never construed the precise language in section 153.0071(e). *See* ___ S.W.3d at ___. In *Molinet*, we considered a limitations statute that applied "[n]otwithstanding any other law," where a separate conflict-of-laws provision stated that in the event of a conflict, the chapter containing the limitations statute prevails. *See* 356 S.W.3d at 411–15. We held that the limitations statute conflicted with a separate statute regarding joining persons designated as responsible third parties, and that the Legislature resolved the conflict in favor of the limitations statute. *See id.* at 413. That analysis offers little guidance here, where the statutory language differs significantly and there is no conflict-of-laws provision to help resolve any conflict.

The Court equates *Molinet*'s "[n]otwithstanding any other law . . . ," language with the language at issue in this case: ". . . notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *See* ___ S.W.3d at ___. But we cannot presume that the Legislature used the different terms interchangeably. *See Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000) ("[W]e . . . must presume that the Legislature chose its words carefully . . . ." (citing *City of*

21

*Beaumont v. Bouillion*, 896 S.W.2d 143, 148 (Tex. 1995))). In fact, we "presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind." *Tex. Lottery Comm'n*, 325 S.W.3d at 635. Although "another" can mean simply "an additional," it seems more likely in the context of section 153.0071(e) that the Legislature used "another" to mean "one more person or thing of the same type as before." *See Another Definition*, MACMILLANDICTIONARY.COM, http://www.macmillandictionary.com/dictionary/british/another (last visited Sept. 18, 2013); *Another Definition*, OXFORDDICTIONARIES.COM, http://oxforddictionaries.com/american_english/another?q=another (last visited Sept. 18, 2013) (defining "another" as "used to refer to an additional person or thing of the same type as one already mentioned or known about; one more; a further"); see also In re Hall, 286 S.W.3d 925, 929 (Tex. 2009) (explaining that "if a different, more limited, or precise definition is apparent from the term's use in the context of the statute, we apply that meaning," and applying the second dictionary definition of "detention"). I would construe "another rule of law" with reference to section 153.0071(e)'s preceding clause, "Rule 11 of the Texas Rules of Civil Procedure."

Prior to the enactment of ADR provisions in section 153.0071, parties settled family disputes by entering into agreements pursuant to Texas Rule of Civil Procedure 11, Chapter 154 of the Civil Practice and Remedies Code, and general principles of contract law. *See In re Calderon*, 96 S.W.3d 711, 717–18 (Tex. App.—Tyler 2003, orig. proceeding). Rule 11 provides a mechanism for parties or attorneys to narrow the issues before the trial court and independently resolve other matters in a pending lawsuit through properly executed written agreements. TEX. R. CIV. P. 11 ("Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit

22

pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."); *see also Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007); *Padilla v. LaFrance*, 907 S.W.2d 454, 459–61 (Tex. 1995). If a party to a settlement agreement—typically a Rule 11 agreement—withdrew consent before the trial court entered judgment, the other party could enforce the agreement only as any other contract, by filing a separate breach-of-contract suit. *See Calderon*, 96 S.W.3d at 718. With the enactment of section 153.0071 and the later enactment of section 6.602 for resolution of divorce disputes, the Legislature created a procedural shortcut to eliminate the requirement of a separate suit for enforcement of MSAs when a party repudiates the agreement, instead allowing the opposing party to easily seek enforcement of, and judgment on, an MSA that meets the statutory prerequisites, without a separate breach-of-contract suit. *See id.* ("[W]e hold that the phrase 'notwithstanding Rule 11, Texas Rules of Procedure or another rule of law' in section 153.0071(e) means that Rule 11, Chapter 154 of the Texas Civil Practice and Remedies Code, and general contract law, insofar as they apply to the enforcement of settlement agreements, do not apply to the enforcement of a mediated settlement agreement in a [suit affecting the parent-child relationship (SAPCR)] if the agreement meets the requirements of 153.0071(d)."); *Boyd v. Boyd*, 67 S.W.3d 398, 403 (Tex. App.—Fort Worth 2002, no pet.) (holding that "notwithstanding Rule 11 . . . or another rule of law" means "the requirements of [R]ule 11 and the common law that ordinarily apply to the enforcement of settlement agreements do not apply to mediated settlements . . . if the agreements meet the three requirements listed"); *Cayan v. Cayan*, 38 S.W.3d 161, 164–66 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (holding that the "notwithstanding Rule 11 . . . or another rule of law" language

reflects the Legislature's intent to eliminate the requirement of enforcement by a separate suit and that "another rule of law" refers to the rules of law that require a separate suit for enforcement). Because section 153.0071(e) specifically refers to Rule 11 agreements—the primary mechanism for settlement agreements prior to enactment of section 153.0071—I interpret the general phrase "another rule of law" in this instance to mean that, regardless of any provisions under which similar types of agreements to resolve family disputes may be repudiated or withdrawn prior to entry of judgment, a party's withdrawal of consent to a binding MSA shall not interfere with the entry of judgment on or enforcement of a properly executed, binding MSA. This Court agreed with this view when it considered section 6.602, which provides for MSAs in divorce cases and contains the same language at issue in section 153.0071. *See Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012) ("[O]nce signed, an MSA cannot be revoked like other settlement agreements.").

By giving the phrase "notwithstanding . . . another rule of law" such an expansive meaning, the Court renders meaningless the Legislature's specific reference to Rule 11. If the Legislature intended "another rule of law" to mean *all* rules of law without restriction, then the Legislature would not have needed to reference Rule 11. *See Leordeanu v. Am. Prot. Ins. Co.*, 330 S.W.3d 239, 248 n.35 (Tex. 2010) ("We construe statutes to give effect to every provision and ensure that no provision is rendered meaningless or superfluous."). Under the canon of construction *noscitur a sociis*, we interpret the Legislature's words in their statutory context. *See, e.g.*, *U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 606 (Tex. 2008) ("Under the traditional canon of construction *noscitur a sociis* ('a word is known by the company it keeps'), each of the words used . . . must be construed in context."); *Feiss v. State Farm Lloyds*, 202 S.W.3d 744, 750 (Tex. 2006) ("In

24

construing the [statutory] term, we are governed by the traditional canon of construction *noscitur a sociis*—'that a word is known by the company it keeps.'"); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003) ("[T]he meaning of particular words in a statute may be ascertained by reference to other words associated with them in the same statute."). The purpose of this rule of statutory construction is "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Feiss*, 202 S.W.3d at 750 n.29 (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). Because "another rule of law" appears in the context of "Rule 11, Texas Rules of Civil Procedure," I would construe the phrase narrowly.

The Court suggests that allowing a trial court to consider the specific terms of an MSA before entering judgment, even in a very rare case such as this, would undermine the state's strong public policy in favor of ADR. *See* ___ S.W.3d at ___. But the overarching best interest policy expressed in section 153.002 of the Family Code and the ADR public policy in section 154.002 of the Civil Practice and Remedies Code are not incompatible or mutually exclusive. *Compare* TEX. FAM. CODE § 153.002, *with* TEX. CIV. PRAC. & REM. CODE § 154.002. I would harmonize those provisions to promote the state's strong interest in both, by encouraging parties to rely upon ADR procedures to amicably and peaceably resolve disputes but also by providing courts the judicial oversight to effectuate the state's fundamental and longstanding public policy of acting in the child's best interest—especially, in those rare cases, when parents may not. I am not convinced, as Stephanie argues and the Court seems to believe, that recognizing the trial court's authority to protect children from custody and possession modifications that threaten their safety and welfare, and are therefore not in their best interests, would unravel the entire structure and efficacy of ADR procedures in child

25

custody disputes. Nor am I convinced that parties in suits affecting the parent-child relationship would cease to rely upon the mechanisms of peaceable resolution through mediation or another form of ADR. Rather, I believe that sensible parties would continue to rely upon the most effective and efficient procedures available to resolve their disputes.[12]

We must presume that the Legislature enacted section 153.0071 with the intent that it not conflict with existing statutory provisions such as sections 153.001 and 153.002, that it further the public interest, and that it lead to a just and reasonable result. *See* TEX. GOV'T CODE § 311.021. "[I]t is settled that every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible." *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963). Guided by the Legislature's specific reference to Rule 11 agreements and use of the word "another," I do not read "notwithstanding . . . another rule of law" so broadly as to mean any and all other statutory provisions. In fact, I believe such a broad construction leads to an absurd result, as it potentially allows parties to circumvent statutory provisions enacted to protect children, as well as the clear policy of the state to ensure protection of children's best interests. *See Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 73 (Tex. 2011) ("We . . . interpret statutes to avoid an absurd result."); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008) ("[W]e construe the statute's words according to their plain and common meaning . . . unless such a construction leads to absurd

---

[12] If parents know what is best for their children, as the Court believes, and if children suffer needlessly from traditional custody litigation, a fact the Court says is well-documented, and if successful mediation largely avoids those harmful effects, as the Court asserts, then why would parents opt not to use mediation to settle their disputes? *See* ___ S.W.3d at ___.

results."); *Leonard*, 821 S.W.2d at 278 ("Parties cannot by contract deprive the court of its power to guard the best interest of the child.").

### III. The Trial Court's Discretion to Reject This MSA

The trial court clearly determined, based on Stephanie's own admissions, that Stephanie has little regard for court orders to protect children from her sex-offender husband, and that she has repeatedly made decisions against her daughter's best interest, putting her daughter at substantial risk. Thus, this is a rare case where a party's testimony negated the presumption that the parties acted in the child's best interest when entering into the MSA. Under these circumstances, I would hold that it was not an abuse of discretion for the court to consider the terms of the MSA and whether the modification, which would allow Stephanie unsupervised periods of possession, posed a threat to the child's safety and welfare.

Although the MSA contains provisions to keep Scott away from the child during Stephanie's periods of possession and appears at first glance to offer the child more protection than the 2007 order adjudicating parentage,[13] those protective provisions are directed only at Scott, who is not a party to the MSA or the lawsuit. The MSA provides:

> At all times[,] Scott Lee is enjoined from being within 5 miles of [the daughter]. During the mother's periods of possession with [the daughter], Scott Lee shall notify [Benjamin] through Stephanie Lee by e-mail or other mail where he shall be staying . . . [a]nd the make and model of the vehicle he will be driving. This shall be done at least 5 days prior to any visits. [Benjamin] shall have the right to have an

---

[13] The record contains no indication that the trial court has issued temporary orders or otherwise altered the custody, possession, and access provisions of the 2007 order.

agent or himself monitor [Scott] Lee's location by either calling or driving by the location at reasonable times.[14]

Under this provision, Stephanie could have only one duty with regard to protecting her child from exposure to the registered sex offender who lives with her: She must pass along to Benjamin information that Scott provides. But Stephanie can perform only if Scott provides the notification in the first place. If Scott offers no information, the MSA requires nothing of Stephanie. If Scott does not stay the required distance from the child, the MSA requires nothing of Stephanie. If Scott appears at the house while the child is there, the MSA requires nothing of Stephanie. Scott could provide no location or vehicle information, could appear at the house during Stephanie's period of possession, and could climb naked into bed with the child, and Stephanie would have complied with the MSA. The effectiveness of the MSA's provisions designed to safeguard the child's welfare depend almost entirely on the voluntary actions of Scott, a non-party.

The parties have not briefed or argued the enforceability of those protective provisions aimed at Scott, and that question is not squarely before us in this proceeding. Nevertheless, I question the enforceability of MSA provisions that purport to bind a non-party and require little if anything of the

---

[14] Because the MSA uses the word "enjoined," the Court and the concurrence refer to the protective provision as an injunction. ___ S.W.3d at ___ n.17. The parties have presented no arguments about whether an agreed MSA provision could be construed as or enforced as a true injunction. *See* TEX. FAM. CODE § 105.001 (providing for trial court issuance of temporary injunctions in family law matters); *see, e.g.*, *Peck v. Peck*, 172 S.W.3d 26, 35 (Tex. App.—Dallas 2005, pet. denied) (noting that although the Family Code does not speak to permanent injunctions, many Texas cases address final orders in family law matters that incorporate permanent injunctions). Nor have the parties presented arguments about whether an MSA provision, if it indeed can be an injunction, could be binding on a person who is not a party to the MSA or the lawsuit. *See* TEX. R. CIV. P. 683 (stating that an order granting an injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise"). I leave those questions for another day, but I do not assume that simply because Stephanie and Benjamin chose to "enjoin" a non-party, it is in fact an injunction that can be enforced against Scott.

28

parties themselves to protect the child from harm, as well as the availability of a remedy for failure to comply.[15] *See* TEX. FAM. CODE § 153.0071(d) ("A mediated settlement agreement is binding *on the parties* if the agreement [satisfies particular requirements]." (emphasis added)); *cf. Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993) ("Under Texas law, in the absence of a relationship between the parties giving rise to the right of control, one person is under no legal duty to control the conduct of another . . . ."). The Court, which agrees that the MSA could have been more "artfully worded," *see* ___S.W.3d at ___ n.17, rationalizes that only a violation of the agreement could subject the child to harm. But the Court misses the point—a possession and access modification that (1) does not require Stephanie to keep the child away from Scott, (2) contains no supervision requirements, and (3) relies on Scott to act voluntarily in accordance with an MSA that he did not agree to does, on its face, subject the child to harm.

The Court suggests that the trial court can cure the MSA's inartful wording by altering the agreement to clarify its terms. *See id.* That proposition was not briefed or argued, and I am not convinced that the trial court can take such action. The Court relies on *Haynes v. Haynes*, 180 S.W.3d 927, 930 (Tex. App.—Dallas 2006, no pet.), a case involving a property division settlement in a divorce and not an MSA to modify child custody, access, or possession. *See id.* at 928–29. *Haynes* relied on *McLendon v. McLendon*, 847 S.W.2d 601, 606 (Tex. App.—Dallas 1992, writ denied), an earlier case from the same court that also involved a property division settlement in a

---

[15] We have held that third parties can be bound by arbitration agreements they did not sign under certain circumstances, but those cases are inapplicable here. *See, e.g.*, *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738–39 (Tex. 2005) (explaining that, under federal substantive law, non-signatories have been bound by arbitration agreements under contract and agency law principles of (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary).

divorce and addressed a Rule 11 agreement, not an MSA under the Family Code. *See id.* at 604–06; *Haynes*, 180 S.W.3d at 930. Although this Court has not, until today, addressed trial court authority to modify the terms of an MSA under section 153.0071,[16] we have previously held that "a final judgment which is founded upon a settlement agreement reached by the parties must be in strict or literal compliance with that agreement." *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976). Just over a year ago, this Court held that when an MSA contained a process for resolution of disputes regarding ambiguities in the MSA's terms, the mediator was the appropriate authority under the MSA to resolve a factual dispute regarding the parties' intent, not the trial court. *See Milner*, 361 S.W.3d at 622. The MSA in this case contains just such a provision, under which disputes regarding "the interpretation, omitted issues, and/or performance" of the MSA shall be resolved by phone conference with the mediator or, if unsuccessful, by binding arbitration with the mediator serving as arbitrator. I cannot understand why this Court would hold that the parties in *Milner* must, pursuant to their agreement, have the mediator resolve issues regarding the parties' intent, and hold that the trial court can modify the parties' agreement in this case to reflect the parties' "clear intent." *See* ___ S.W.3d at ___ n.17. Even if a trial court can, as the Court says,

---

[16] The issue is far from settled in the courts of appeals. *See, e.g.*, *Byrd v. Byrd*, No. 04-11-00700-CV, 2012 Tex. App. LEXIS 9840, at *10 (Tex. App.—San Antonio Nov. 30, 2012, no pet.) (mem. op.) ("While a trial court in these circumstances has authority not to enforce the mediated settlement agreement, it has no authority to sign a judgment that varies from the terms of the mediated settlement agreement."); *Philipp v. Tex. Dep't of Family & Protective Servs.*, No. 03-11-00418-CV, 2012 Tex. App. LEXIS 2760, at *12 & n.3 (Tex. App—Austin Apr. 4, 2012, no pet.) (mem. op.) ("The trial court has no authority to enter a judgment that varies from the terms of the mediated settlement agreement," and even if the family violence provision were implicated, "the trial court would be permitted only to decline to enter a judgment on the MSA, not to modify its terms."); *Garcia-Udall v. Udall*, 141 S.W.3d 323, 332 (Tex. App.—Dallas 2004, no pet.) ("[T]he trial court has no authority to enter a judgment that varies from the terms of the mediated settlement agreement."). *But see, e.g.*, *Wallace v. McFarlane*, No. 01-10-00368-CV, 2013 Tex. App. LEXIS 10587, at *22 (Tex. App.—Houston [1st Dist.] Aug. 22, 2013, no pet. h.) ("A trial court may modify the terms of an MSA, however, so long as those modifications do not add terms, significantly alter the original terms, or undermine the parties' intent.").

modify an MSA to effectuate and implement the parties' intent, I find no support in this case for the Court's conclusion that the parties clearly intended to require Stephanie to keep the child at least five miles away from Scott at all times. *See id.* The MSA provides only that Stephanie must pass on information provided to her by Scott. Nowhere does the record indicate that Stephanie intended herself to be bound by and face contempt charges for violation of the provision requiring *Scott* to stay five miles from the child. Just as we cannot assume that every MSA parents agree to is in their child's best interest, we cannot assume that every provision in an MSA was intended to protect the child to the maximum extent possible. I would hold, as this Court did in *Milner*, that any question regarding the parties' intent with regard to the protective provisions in this MSA must be resolved by the mediator according to the MSA, and not by the trial court. And even if there were no question or ambiguity about the parties' intent, the issue of whether a trial court can modify the terms of the MSA to "clarify" that intent is best left for another day and not decided in a footnote, without briefing or argument.

The trial court heard only brief testimony from Stephanie and Benjamin in a short hearing on a motion for entry of judgment on the MSA, but neither party put on any additional evidence.[17]

---

[17] The concurrence concludes that the record does not support a finding that entry of judgment on the MSA could endanger the child. ___ S.W.3d at ___. We give trial courts wide latitude in determining matters relating to a child's best interest, however. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). "With the opportunity to observe the appearance and demeanor of the witnesses, to weigh their testimony, and evaluate the virtues of parties, no one is in a position to do this better than the trial court." *Taylor v. Meek*, 276 S.W.2d 787, 790 (Tex. 1955) (quoting *Valentine v. Valentine*, 203 S.W.2d 693, 696 (Tex. Civ. App.—Amarillo 1947, no writ)). We must not second-guess the trial court simply because we read short, awkwardly-phrased testimony differently. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995) ("The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles[,] . . . not whether, 'in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action.'" (internal citations omitted)); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) ("[T]he reviewing court may not substitute its judgment for that of the trial court . . . . Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown

In this instance, where the MSA does not require Stephanie's periods of possession to be supervised, as Benjamin had requested in his motion to modify the 2007 order, and where the child's welfare depends upon the acts of a non-party to the MSA who, testimony indicates, has previously disregarded a court order that apparently prohibited him from being around children, I would hold that it was not an abuse of discretion for the trial court to decline to enter judgment on the MSA and instead set the case for trial at which the parties can put on evidence of whether unsupervised visitation with Stephanie is in the child's best interest.[18] *See Holley*, 544 S.W.2d at 371–72 (describing factors pertinent to the best interest determination, including the emotional and physical dangers to the child now and in the future).

Believing that a trial court can protect children subject to harmful MSAs by continuing hearings seeking entry of judgment, the plurality attempts to resolve the absurdity of the Court's holding by telling trial courts to stall. *See* ___ S.W.3d at ___.  But we cannot have it both ways—either the Family Code requires a trial court to enter judgment on a statutorily compliant

---

to be arbitrary and unreasonable."); *Bell v. Campbell*, 328 S.W.3d 618, 620 (Tex. App.—El Paso 2010, no pet.) ("We recognize that the trial court is best situated to observe the demeanor and personalities of the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record.").  I agree with the concurrence that a finding of endangerment and rejection of an MSA on that basis should not occur without evidentiary support, but I disagree with the conclusions the concurrence draws on this record.  Under our mandamus standard of review, any evidence of endangerment—even arguably ambiguous statements, and even when there is conflicting evidence—is *some* evidence; when then there is some evidence to support the trial court's decision, no abuse of discretion exists. *See Gen. Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998) ("An abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence." (quoting *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex. 1978))); *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) ("Although the court of appeals reversed the trial court on the ground that there was 'no evidence' to support the issuance of the turnover order, the court of appeals should have reviewed the trial court's judgment under an abuse of discretion standard." (internal citations omitted)).

[18] I disagree with the concurrence's implication that a trial court with concerns about a child's safety under an MSA must, at the prove-up stage, conduct a full evidentiary hearing regarding the potential effects of the modification and the intent of parties and non-parties to comply with provisions of the MSA.

MSA when it is presented, or the Family Code allows the trial court discretion not to enter judgment when the MSA's modification terms jeopardize the child's safety and welfare. Under the plurality's analysis, it is unlikely that a trial court would ever discover that a modification pursuant to an MSA would jeopardize a child's safety and welfare. Even if the trial court did somehow reach that conclusion, the plurality concludes that the trial court can do nothing about that except delay the inevitable entry of judgment. *See id.* at ___. To allow the court to do otherwise—to reject an MSA it determines could subject the child to harm—would, in the plurality's view, mean that a trial court can conduct a broad best interest inquiry. But a court armed with enough information to determine that a child is in danger under an MSA need not analyze the *Holley* factors to conclude that modification pursuant to the MSA is not in the child's best interest. Any MSA that places a child's safety and welfare in danger—through unenforceable provisions that could leave a child exposed to a convicted sex offender, or otherwise—simply cannot be in a child's best interest. To say that a trial court can do nothing except delay entry of judgment and call the Department of Family and Protective Services runs counter to public policy and leaves children whose parents act against their best interest without a voice—without protection—in the legal system. I believe that the Legislature intended for trial court authority to extend beyond simply placing an MSA in legal limbo and to include the discretion to refuse entry of judgment on dangerous MSAs. Moreover, I believe that the plurality's continuance procedure, which seemingly allows trial courts to put off entry of judgment that the Court implies is non-discretionary, invites parties to file mandamus actions seeking to force trial courts to stop delaying the inevitable entry of judgment on MSAs that satisfy the statutory prerequisites.

33

Further, the plurality advises that a trial court faced with a potentially harmful MSA should issue some sort of temporary orders or protective orders in conjunction with entry of judgment. *Id.* at ___. If the Family Code allowed trial courts to issue whatever orders are necessary to protect children, there might be no disagreement in this case. But the Family Code limits the availability of protective actions, and trial courts often must rely on parties protecting children's best interests to request such orders.[19] For example, although the Family Code authorizes a trial court to make temporary orders for the safety and welfare of the child, such orders are available while a SAPCR is pending and "before final order," making the availability in cases of statutorily-compliant MSAs questionable. *See* TEX. FAM. CODE § 105.001; *Ex parte Brown*, 382 S.W.2d 97, 99 (Tex. 1964) (explaining that once a trial court has rendered judgment awarding custody of a child, a temporary custody order is no longer in effect). Even if temporary orders could be issued in this MSA context, it seems a perversion of the Family Code to suggest that trial courts should delay entry of judgment *for the purpose* of entering temporary orders. Similarly, although the Family Code authorizes a trial court to issue a protective order, several things must happen before the court can do so: an adult must file an application to protect a child from family violence, the respondent accused of family violence must have notice and an opportunity to answer, the trial court must conduct a hearing, and the court must find that family violence occurred and is likely to occur in the future. *See* TEX. FAM. CODE §§ 81.001, 82.001–.005, .021, .041–.043, 84.001, 85.001, .021. If the Family Code contains a provision under which this trial court could have entered orders to ensure protection of this child

---

[19] The Court again misses the critical question in cases such as this—what can a trial court do when parents are not acting in the child's best interest?

despite the MSA, nobody has told us where to find it. Even if, as the plurality assumes, trial courts can mitigate the effects of harmful MSAs by issuing some sort of orders to protect children, what might those orders look like? Could the trial court in this case order that Stephanie's periods of possession be supervised? Could the trial court order that Stephanie keep the child out of the Scott's presence? Although such orders would certainly do more to protect the child, they would also alter the parties' agreement, a result that the Court believes the Legislature intended to avoid. In the end, although I agree with the sentiment that trial courts must protect children from harm, the plurality's purported solution to the problem posed by its interpretation of section 153.0071—which is not much of a solution at all when the Court prohibits trial courts from rejecting dangerous MSAs— relies on a "tortured reading" of the Family Code's protective action provisions. *See* ___ S.W.3d at ___ (referring to the dissent's interpretation of the MSA statute as a "tortured reading").

Compelling the trial court to disregard the fundamental public policies set forth in sections 153.001 and 153.002, including the policy to "provide a safe, stable, and nonviolent environment for the child," simply because the parents executed an irrevocable MSA would not only render these policies meaningless, but yield an absurd result. TEX. FAM. CODE § 153.001(a)(2); *see Jose Carreras, M.D., P.A.*, 339 S.W.3d at 73. I can easily imagine scenarios more outlandish than this, where parents execute an MSA that puts a child in even more danger. It would be absurd and nonsensical for a trial court to have no ability to protect a child from such an MSA, and to compel the court to enter judgment on an MSA that it concludes could be harmful to the child. The Court's overwrought opinion purports to protect the interests of children by championing the mediated

35

settlement agreement process, but when a child is placed in danger by the actual terms of an agreement, as opposed to the process by which a dispute is resolved, the Court's holding falls short.

## IV. Mandamus Relief

In granting mandamus relief, the Court orders the trial court to do two things: (1) vacate its order denying Stephanie's motion to enter judgment on the MSA, and (2) vacate its order setting the case for trial. Nowhere does the Court say that the trial court must enter judgment on the MSA. It is a curious result—a trial court cannot deny a motion to enter judgment, but a trial court need not actually enter judgment; a party is "entitled to judgment," and cannot be denied judgment, but may not actually get the judgment to which she is entitled. Why would the Court issue such a perplexing ruling?

Perhaps it is all a matter of semantics. One could argue that the Court's opinion *impliedly* requires the trial court to enter judgment on the MSA. But as a court of last resort, we are not usually in the business of implying rulings.

Perhaps the Court hopes the trial court will not have to sign a judgment on this MSA because it will instead delay so that it can enter temporary orders, and then DFPS will seek to have Stephanie's parental rights terminated or take some action that will moot the MSA issue. But we are not usually in the business of banking on unpredictable contingencies either.

Surely the Court's conspicuous lack of an order directing the trial court to enter judgment on the MSA must mean *something*. After all, Stephanie's petition for writ of mandamus specifically requested that the Court grant a writ requiring the trial court to enter judgment based upon the MSA. I think the absence of any requirement that the trial court enter judgment on the MSA can be

36

explained only as follows: (1) a majority of this Court believes that the Family Code allows a trial court discretion to refuse to sign a judgment pursuant to an MSA that places a child's safety and welfare in danger, and (2) a majority of this Court does not believe that the Family Code requires the trial court, on this record, to enter judgment on this MSA. Of course, the Court does not say that either. But if a majority of the Court believed "entitled to judgment . . . notwithstanding . . . another rule of law" created a non-discretionary, ministerial duty to enter judgment, surely it would say so. Instead, the Court goes out of its way to avoid saying just that, and in the process provides no guidance about what a trial court is to do with an MSA that endangers a child, or what this trial court is to do with this MSA. The only clear holding today appears to be that a trial court cannot refuse to enter judgment on an MSA using the words "best interest."

If the trial court here believes, based on the evidence presented, that the child's safety and welfare will be endangered under a modification pursuant to the MSA, then it appears the court can comply with this Court's ruling by withdrawing its order rejecting the MSA on best interest grounds and issuing a new order rejecting the MSA on endangerment grounds. Or maybe, as the concurrence implies, the court could hear additional evidence to inquire further into the child's safety and welfare under the MSA and, if appropriate, issue a new order rejecting the MSA on endangerment grounds. *See* \_\_\_ S.W.3d at \_\_\_. Only then will the Court explain today's curious ruling and give trial courts and the family law bar guidance on whether and when a trial court has discretion to refuse to enter judgment on an MSA that places a child's safety and welfare in danger.

For the reasons explained, I believe a trial court faced with such an MSA is entitled to use the best tool available—rejection of the dangerous MSA—to protect the child.

37

## V. Conclusion

I would hold that, in a rare case in which the presumption that MSA parties acted in a child's best interest has been negated by evidence, the trial court does not abuse its discretion by considering the terms of an MSA's custody, possession, or access modification. If those terms jeopardize a child's safety and welfare, so that the modification could not possibly be in the child's best interest, I would hold that the trial court does not abuse its discretion by refusing to enter judgment on the MSA. Here, the mother admitted on the record that she (1) allowed her husband, a registered sex offender, unsupervised contact with her daughter, (2) resided with the sex offender in her home, despite knowing that it was a violation of his conditions of probation, and (3) allowed her husband to violate the terms of his probation through contact with her daughter. I would deny Stephanie's petition for writ of mandamus.

 

_____
Paul W. Green
Justice

OPINION DELIVERED: September 27, 2013